All right, our third case for this morning is Ruderman v. Attorney General Sessions. Mr. Zimmerman. May it please the Court, Timothy Zimmerman here on behalf of the appellant Aleksey Ruderman. The United States seeks to remove Aleksey Ruderman, a Jewish man who came as a teenager from Belarus, from the United States, the only country he's ever known throughout his entire adult life, and return him to Belarus, a country where he no longer has any family, where he was previously tortured as a child, and where an authoritarian regime has watched and encouraged as the Jewish population has been decimated over the last 25 years. But as Mr. Ruderman has repeatedly argued, the government lacks authority to remove him unless Section 212A2B, which requires sentences, plural, to confinement, can be interpreted, contrary to its plain text, to require just one sentence to confinement. No one, not the IJ, not the BIA, and not even the government before this Court, has defended this reading of the statute. Let me ask you about that reading of the statute. The Dictionary Act says that the singular includes the plural, and the plural includes the singular. That's 1 U.S.C. 1. Why isn't the Dictionary Act a good support for the Board's decision? Your Honor, I would point you to other provisions within the INA. Namely, I believe it's 8 U.S.C. I would like you to address the Dictionary Act. The INA, when read in its totality, shows that when Congress chose to... I would like you to address the Dictionary Act. So the question is, does the Dictionary Act apply here, or is there some reason to think that the INA supersedes that part of the Dictionary Act? If that's what you're being asked. Understood, Your Honor. My best answer to that is to, again, refer to the various sections of the INA, because Congress clearly... I think your answer to that is that, unless the context otherwise requires, is probably an important qualification. And here, it talks about aggregate sentences to confinement, not aggregate confinement of 5 years, whether through one sentence added to as many zero sentences as one might wish, which would still leave you with 5 years. Then, of course, you have to discuss what the context clause covers. And the Supreme Court held in inmates of some penal institution that it covers only the linguistic context and not the functional context. That's why I'm asking you to address the Dictionary Act. It's got real language in it, and it actually talks about singulars and plurals, and it's got a context clause, and the context clause has got real interpretations by the Supreme Court. You can't just assume that if there's a plural in the statute, that excludes the possibility that it covers a singular. One has to work through the arguments. And one also has to consider whether the fact that the agency itself did not rely on the Dictionary Act makes any difference, because the agency did not breathe a word, which is why I'm bailing you out a little bit, about this statute. Yes, Your Honor. I would also point to the term aggregate in front of sentences to confinement. If sentences means the singular and the plural, then there's no purpose for the term aggregate in the statute. It would be completely superfluous. And that would be a linguistic argument, I believe. So in this case, I mean, you've offered a number of different possible grounds for getting Mr. Ruderman another look. One of the arguments that the Board seems to have relied on is the question whether, and certainly your opponent, the Attorney General, is saying that Mr. Ruderman didn't preserve this point. I take it he does raise it in his notice of appeal from the immigration judge. He does raise it in his pro se brief, but his lawyer has an offhand sentence in the lawyer's brief later that doesn't. Where does that put us? Is the Board different from the Court of Appeals? The Federal Court of Appeals, if you had a pro se brief and then a counsel brief, would disregard the pro se brief. Is that how it works at the BIA? That's not my understanding, Your Honor. My understanding, according to the BIA ruling practice, is that the BIA allows multiple briefs to be filed. It provides a procedure for striking briefs. The BIA was well within its authority to strike the brief, and it did not do so. A few other points I would point to. It appears to me that the BIA considered Mr. Ruderman's pro se brief, at least impliedly, and I'll give you a couple of reasons for that. One is that the BIA responds to certain arguments related to the Convention Against Torture that Mr. Ruderman raises only in his pro se brief that were not raised in the counsel's brief. Second, the counsel's brief has a line that refers to the pro se brief. There is a set of limits to pro se brief. And so in my mind, it certainly appears that the BIA considered Mr. Ruderman's pro se brief. I would also point the court – oh, I'm sorry. I just have one question about that. His counsel before the board, it wasn't just that he didn't mention this argument about inadmissibility. Didn't he expressly concede that he had the two convictions? And why wouldn't that – even if the board can consider both briefs, wouldn't that concession then trump whatever he had said in his own filing? So the – I would be careful only because the BIA – and I'm just getting to this point. The BIA doesn't use the word concession. It uses the word waived. It says that the argument was waived in the counsel's brief. But didn't the counsel's brief concede, say specifically that he was inadmissible because of the convictions? Unquestionably. The counsel's brief certainly has that comment, and it is in clear conflict with Mr. Ruderman's pro se brief. At the very least, it should have alerted the BIA that there was a tension between these two issues, at the very least. And given the amount – and this court's holding in Juarez v. Holder, particularly footnote 3, if I recall correctly, that all that is required is raising it in the notice of appeal, whereas in this instance, Mr. Ruderman did so much more than that. He raised it in the appeal, raised it in the pro se brief, and the court's opinion in Juarez relied on sort of a – I believe it was – I'm forgetting the standard – the basic contours of a claim, whereas Mr. Ruderman's notice of appeal, which is probably the clearest place to look, says, quote, a single conviction of five years does not track the plural specificity and clarity of section 212A2B. He's very, very clear about it. There's not a kind of reading the tea leaves that's required in order to get there. And so it seems that, you know, at the very least, the BIA was alerted to this and has its own mechanisms for striking his brief or for clarifying what the position was. Mr. Ruderman himself did not have an opportunity to meet with the pro bono counsel that was appointed. They never spoke. They corresponded only by letter. He did not have an opportunity to review the brief before it was filed. And so it was – it would be very unfortunate for the court to rule against Mr. Ruderman on these grounds when he has done so much to preserve the issue. So I wonder, since time is flying, whether we could turn to the Lautenberg Amendment. It does appear, looking at the immigration judge's opinion, that the immigration judge did not recognize that the extreme censorship standard that ordinarily applies is not the standard for the Lautenberg Amendment. So I take it your argument is just that the immigration judge's discretionary call took place inside the wrong boundaries? That's correct, Your Honor. Which law established the rules for that exercise of discretion? That's correct. So even if the board were to take another look, the outcome could be the same, even under the Lautenberg standards? It's important that you use the term could because I would agree with you there. The outcome certainly could be the same, but I don't think that we can say it would be the same. There are a number of differences between the general provision and the Lautenberg provision. For example, as you note, the level of scrutiny that is required. The general provision requires an extreme hardship, whereas the Lautenberg standard only requires humanitarian purposes to assure family unity or in the public interest, which is obviously a much lower standard than extreme hardship. Additionally, a few other factors. Lautenberg parolees do not count against immigration caps. And so if the discretion were to be exercised under the proper standard, there is good reasoning to suggest that at the very least that the discretion may be exercised. But the discretion, didn't they give the reason for the refusal to exercise the discretion to waive the inadmissibility and say that it was because of the crimes? If I recall correctly, it had to do with both the lack of showing for extreme hardship and then also Mr. Ruderman's criminal convictions. So your argument has to be that if the Lautenberg provisions, humanitarian purposes to assure family unity or when it is otherwise in the public interest were there, then perhaps even the crime might have been weighed differently. That's correct, Your Honor. Why? The crime is the crime, right, for the discretion. So if the IJ said and the board accepted that, you know, it seems that there was clearly an error in not applying the right standard from the Lautenberg amendment that it could be waived to assure family unity, not just for extreme hardship. That seems clear. But if the Attorney General doesn't have to exercise his discretion, you know, if he could waive it, and they've said, well, we wouldn't waive it because of the crimes here, the existence of the discretion to do so, that determination might have been wrong. I'm having trouble seeing why the discretion would be exercised differently given the stated reason for the refusal. And that's a good question. And I think the answer is we don't know exactly how this would come out. I think in terms of whether— Well, the immigration judge ties them together. The immigration judge says the court generally may not exercise discretion in granting a waiver for a respondent who's committed a violent or dangerous crime unless the respondent shows the presence of extraordinary circumstances, such as showing that denial of a waiver would result in exceptional, extremely unusual hardship. So they wind up being woven back together again, I think. That's just the immigration judge's opinion. And you're correct about that, Your Honor. I think the difference is that we can't tell at this stage. I think what you're driving at is whether this was harmless error for the BIA and the immigration judge to use the wrong standard. And I think the answer is we can't tell because it is a discretionary standard. And, yes, while the crime was certainly an issue that was woven together with the analysis below, I don't think we can say under the totality of the circumstances and a different standard that the outcome would be the same. Did you want to say, I mean, you can certainly reserve rebuttal time, or if you wanted to say anything about the Convention Against Torture? I do. If I can get one minute and I'll try to reserve the rest. On the Convention Against Torture, we are not asking that this court reweigh simply the facts that were presented below to the IJ. There's two sort of very clear reasons why the IJ committed reversible error, and I'd like to state those very quickly. The IJ misunderstood the required showing by taking matter-of-JFFs, each step more likely than not, standard two literally. Mr. Ruderman's full rebuttal of matter-of-JFF is outlined in the briefs. But JFF is a case that relies upon hypotheticals, upon other hypotheticals and suppositions far beyond what's established here. Well, it's quite obvious looking at Mr. Ruderman's name, Alexei Arkadyevich Ruderman, that he's Alexei's son of Arkady Ruderman. That's just what it means in Russian, right? So it's clear he's Jewish. It's clear he's the son of his father who has these alleged problems. That's correct, Your Honor. But it's important to note that matter-of-JFF, which is relied on extensively below, the applicant there had never experienced torture. His family had never been targeted. And there was no real timeline or something that would show in the future that there was a real substantial risk of future torture, which is extremely different than Mr. Ruderman here. And with that, I would like to reserve as much time as I can for rebuttal. All right. Ms. Strippley. May it please the Court, Brianna Strippley on behalf of the Respondent, the Attorney General of the United States. Your Honors, on August 31, 2008, Petitioner, after a night of drinking, got behind the wheel for a second time while intoxicated. Yeah, we know that. I mean, the question is, what did he do? What are the consequences at this point in terms of the legal framework that should have been used by the immigration judge and the board? They both contributed to this decision. And what consequences flow from that? Your Honor, the government's position is that the only thing that is properly before this Court is the agency's denial of cat deferral. But, you know, you make this argument in your supplemental filing of February 16 that he didn't raise the Lautenberg standard. But I have in front of me both his motion to file notice of appeal and his brief on appeal. And in Part Capital D of the notice, he says it's inapplicable to a Lautenberg parolee like Mr. Ruderman who falls under the regime of 245B12. And then in his brief on appeal, over on page 34, he has an extensive discussion. So whatever else may be wrong with this argument, failure to raise it is surely not it. With regards to the waiver of inadmissibility, is that what Your Honor is addressing? Because we have two different arguments. The first is that there is – You said, in his opening brief to this Court, Ruderman argues for the first time that the immigration judge erred in applying the wrong legal standard to the discretionary denial of his waiver. That's the Lautenberg argument. And he did raise that point. So I said, whatever else you may want to do with it, waiver is not the issue. Just one point of clarification on that, and that is for the waiver of inadmissibility, there is – basically, if we take a step back, all discretionary forms of relief basically have two hurdles for aliens. The first is that they have to demonstrate eligibility for whatever discretionary form of relief it is. In this case, it's a waiver of inadmissibility. The second, however, is that they also have to demonstrate that they warrant it in the exercise of discretion, that they deserve it. Of course. And those are two separate questions. And he is arguing here that the second of those did not occur under the correct legal framework. And he's saying it was done under the standard extreme hardship framework instead of the Lautenberg framework. And he certainly preserved that issue. Again, putting to one side how you resolve that, he preserves this issue. And normally, if something's done under the wrong legal framework, we don't fix it ourselves. That's for the board to do. But we tell the board to use the correct framework, and that's a legal question. Yes, Your Honor. I understand. It is the government's position, however, that if you actually go to petitioner's brief, so the one that the – Okay, so we are at the administrative record. If we look at AR 20 to 25, he's addressing eligibility. Does he challenge the eligibility by saying that the wrong legal standard was applied? Yes. That is conceded. However, when you get to page AR 25 to 28, when he's discussing the discretionary factors, he does not raise that. In fact, what he does is he cites the matter of CVT, which is a case, and just for verbatim, he says – he cites the CVT and says these factors weigh heavily in Alexie's favor. He's applying the factors of CVT, which was a board decision that talked about cancellation of removal, exercise of discretion. So when, if you meet all the eligibility requirements for cancellation of removal, can the agency still deny the exercise of discretion? And it holds the general principle that Marin held, which is basically you weigh the negative and the positive. Then you go into the body of it, and he's – I'm sorry. I just don't see it. I mean, I think he raises Lautenberg, whether, as Judge Barrett is wondering, whether this is a harmless error given the nature of the negligent homicide through the DUI. That's a question. There are other questions. But I just don't see the waiver. He's under a different legal regime as a Lautenberg. Yes, Your Honor. Could you explain why, as Judge Wood is pointing out, he's under a different legal regime? And so to this point of whether the discretion would be exercised differently under that lighter standard, which there was an error, you concede, right, that he was judged under the extreme hardship standard when he should have been judged under the lighter Lautenberg standard. Why shouldn't he get a remand for that? Well, with regards to the eligibility grounds, that appears, although it would be for the attorney general to determine in the first instance, and in this case the Board passed on the eligibility finding, but, yes, it does appear that the wrong standard was applied. It was a 212H standard as opposed to the Lautenberg standard, which is a lesser standard. However, again, with regards to discretionary, that is wholly apart. It's not wholly apart, though. Occasionally discretion is completely unbounded, and in those cases we say there's no role for the courts to play because there are no standards that can be applied. Much more commonly, discretion is cabined by guidance in the statute, whether it's extreme hardship, whether it's public interest and humanitarian concerns. There are other phrases, and we can go through all of administrative law with this, but this is not one of those things that's so unbounded that whatever the attorney general does is just simply not judicially reviewable. We review these things all the time for abuse of discretion. Well, with regards to a 212H and the exercise of discretion, the INA precludes jurisdiction unless there is a legal or constitutional. Right. So the role for this court is to make sure that the correct framework has been used and then let the chips fall where they may. Let the attorney general take another look at it. If you're making a prediction that the attorney general isn't going to see it differently, you may be right, but you may not be. With regards to that, Your Honor, I would just note that Petitioner has not identified one particular factor that the agency did not consider that would impact the balance of that weighing. It's the weight. It's the weight of the things. He doesn't contest that he had this extremely unfortunate incident, but the weight and the number of considerations are going to vary. I do want you to also address this aggregate sentences to confinement question because that actually concerns me as well. I don't see why, under your view, the statute shouldn't have just said, if no matter how you get there, you've been confined for five years or more, then you're under this regime. That's not what it says. It talks about aggregate sentences to confinement, and I can see why the statute might treat somebody who's got a couple of different confinement sentences, not just probation, would be treated differently. Your Honor, I think the first and foremost point is that the Board didn't touch this because they construed Petitioner's counsel later in time. Which is a serious problem all on its own. Yes. I'm sorry, that? That's a serious problem all on its own. The Board didn't mention it, so obviously the Board didn't rely on the Dictionary Act. Are you relying on the Dictionary Act? No, Your Honor. We are relying on the fact that if we walk through what happened was, yes, did Petitioner file a pro se brief that raised this? Yes. But then he obtained pro bono counsel. But, Ms. Strippley, the Board very distinctly does not follow the same rules that the courts of appeals of this country follow. We don't allow for hybrid representation. If you get the pro bono attorney, then we're going to reject your pro se briefs. Sometimes people don't like that, but that's the way the rules operate. The Board has quite a different and much less formal regime. You don't even have to file a brief, number one. All you have to do is file your notice of appeal and indicate the grounds. If you choose to file a brief, you can, but you can file a couple of briefs. And that's exactly what happened in his case. Actually, Your Honor. And the Board never copes with that. The Board never says to us, you know, we think there's waiver. The Board never says we're going to take the last statement as the defense. The Board could have said a lot of things, but the Board never says any of them. Your Honor, the Board did say waiver because, again, what you have is petitioners. It never takes into it. There's never a signal that the court knows that Mr. Ruderman himself has very competently and elaborately actually spelled out the argument. I think the problem is this, Your Honor. If you have counsel and they file a later pleading and they say something that is directly inconsistent, so verbatim, this is what petitioners counsel conceded, Alexie's convictions for two crimes with an aggregate prison sentence of five years make him inadmissible under INA 212A2B. So since when are the statements of lawyers binding as a statement of law? If you stand here and tell us something, does that mean that this court is not entitled to find the law for itself? Well, Your Honor, this court— No. No, but Your Honor, no. But there is some— And so that's what his lawyer has done. His lawyer has made this statement that he's been convicted for two crimes with an aggregate prison sentence of five years. Well, it's a legal question whether that is actually what the statute calls for. Your Honor, the Board was dealing with what it had before it. They conceded this point and moved on to the waiver. And to the extent that petitioner is raising these arguments now for the first time— He's not raising them for the first time. The poor guy was trying to raise them all along. In regards to that issue— And the Board signals, as Mr. Zimmerman points out, that it knows and indeed partly relies on the pro se brief. We would disagree with that, especially because it's an implicit argument and there's no direct points to that. And specifically in this case, if petitioner wanted to allege that that was poor performance on his attorney, he had a remedy. At any point in time, he could have filed a motion to reopen for IAC. In fact, he can still do so. I'm not sure if opposing counsel has done so in this case or not, but that's a remedy that exists if he disagrees with his counsel's representation. But matter of Alaska, as the Board held, it's immaterial whether the alien authorized his attorney to make that representation because so long as that was prepared by the attorney of record on his behalf, it's prima facie regarding authorization. And so you can't have both. You can't both have an argument that he's inadmissible and admissible coexist. And so what the Board did was took the later in time counsel pleading. Pro bono counsel entered his appearance for and at the request of petitioner. The briefing was reset and a new brief was filed. So in that regard... The Board doesn't say, I'm looking at the Board's opinion, the Board doesn't say a third of what you just said. So there's an issue actually under Chenery even about whether we should  The immigration judge denied respondent's application for cancellation of removal based on his failure to establish the requisite good moral character and because he has been convicted of two or more offenses for which the aggregate sentences imposed were five years or more. Then just cites the immigration judge's opinion, cites Pena Galindo, and then just zips on and says the respondent has not raised any meaningful challenges. Nothing else that you just said is in there. I believe the respondent has not raised any meaningful challenges to the immigration's finding that he is inadmissible under the 212. Does that count as all the things you just said? I don't think so. I don't think it really elaborates on why you're taking like a second in time rule or why you're taking a rule of ignoring the pro se filings or why you're being inconsistent with the Board's regulations about how many briefs you can file. I believe the Board, well, again, to address the Court's concern about Chenery, obviously the Board's decision is what it is, but it's clear that because there was the concession, there was no need to address these arguments which are now being raised about when you have competing briefs. Except there's a conflict. It's not just that there's a naked concession. If there were, I would agree with you. If that was the only thing that was ever filed and there's a concession, maybe it would be a matter of Lozado situation. But it's not. We have a more complicated record. Well, again. Before your time runs out too, since I think I understand your position on this, you might say a word about the Convention Against Torture because the government's view that he doesn't have family members who've had problems in Belarus is kind of ridiculous because he doesn't have any family members left in Belarus. His mother had a Christian name, not a Jewish name, so the fact that she's been able to go back and visit doesn't tell me much. As you may or may not know, in the former Soviet Union, being Jewish is regarded as a nationality, so it appears on your passport. So as soon as you show your passport to somebody, they know you're Jewish, and not to mention the fact that the patronymic signals whose son he is, son of the Jewish guy Arkady Ruderman. You know, that's all there, and it's been a pretty ugly picture in Belarus, unfortunately. I understand, Your Honor. Each case, though, we are bound by the record that's before us, and it is petitioner's burden to show that the record compels the finding, not only supports it. So is there anti-Semitism? It appears so. But the country reports say that it's on the decline. It's not on the decline, though. I mean, the Jewish population, that's like saying in Hitler's Germany, it was on the decline. Well, if you kill 7 million people, I guess there aren't as many people. With regards to that reference, as far as physical violence is concerned, there's no evidence in the record of physical violence against Jews in Belarus. What petitioner submitted was vandalism. Well, they broke both of his wrists. The immigration judge finds that he suffered torture in the past. Yes, that is correct, Your Honor, but that was when he was 8 or 9 years old, which is almost 3 decades ago. And he was vulnerable. Right, Your Honor. And in addition to that, we have to look at what the evidence submitted was, which is vandalism. There are some anti-Semitic statements made by the President, but if you read the articles further, it shows that they are couched in different terms, that they were made against Iran for other political reasons. I understand, but any gap in the evidence that exists was petitioner's to fill because it was his burden, and on this record, it certainly doesn't demonstrate that the record compels the finding. Okay. If there's no more further questions from the panel. If you want to wrap up, that's fine. Okay. All right. Thank you very much. You have a little bit of time left, Mr. Zimmerman. Thank you, Your Honor. I'd like to make three brief points. First, just to respond to Apelli's argument regarding the waiver issue, I would direct the Court to the required supplemental short appendix, three for the BIA opinion on the Convention Against Torture, and supplemental appendix 348 through 350, and 362 for the issues that I outlined that are raised in the pro se brief and not the counsel's brief. Second, just to respond to Judge Barrett's question from earlier, I would direct Your Honor to Matter of Martin, which held that, quote, judges should avoid cross-application of particular principles or standards for the exercise of discretion, just as additional support for my argument there. With respect to the 28J letter submitted by Apelli's last week, I think that I'm not going to spend time responding to it. If the Court finds that that is important, we would request an opportunity to respond to it, but we're not going to do that here. Finally, I would like to point to the beginning of Apelli's argument where she referred to Mr. Ruderman and what is admittedly a horrible, horrible accident. Under this Court's precedent, Wieseru v. Holder, 705 F. 3rd, 258, cited in the briefs, it explains that the convention against torture does not only apply to those with unblemished records. Instead, the convention serves to protect anyone who will, quote, be sent to a country where they will experience torture. And I think the record before the IJ was clear that it is not a mathematical certainty that Mr. Ruderman will be tortured in Belarus, but given all of the factors, given the prior torture, given his credible testimony, the documentary evidence that was submitted alongside of it, I think we've met this circuit's substantial risk test that more than likely than not, if he's returned, he will be tortured. All right. Thank you very much, Mr. Zimmerman. And you were appointed by the Court, were you not? And we appreciate your efforts on behalf of your client. Thanks as well, of course, to the government. We will take the case under advisement.